(No. 19628.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY CHALEM, Plaintiff in Error.

*Opinion filed October 19, 1929.*

CROWE & KOLB, (WILLIAM J. LANCASTER, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The grand jury of the criminal court of Cook county indicted Harry Chalem in October, 1928, for the crime of robbery with a gun. He pleaded not guilty, was tried in December, 1928, found guilty as charged in the indictment and to be of the age of twenty-seven years. Motions for a new trial and in arrest of judgment were overruled and defendant was sentenced to the penitentiary. He has sued out a writ of error to review the judgment.

Mary Thorne was the person the indictment charged defendant with robbing. She testified that she lived at 1453 West Adams street and kept a rooming house. On September 21, 1928, in the neighborhood of 4:30 in the afternoon, a man came to her front door and asked if a party he named was there. She at first said on the trial that she could not recall the name of the man defendant asked for, but he was not there. Later she remembered that the nickname of the man inquired for was "Duke," and she said he had roomed there for about a week or two some time before but was not there at that time. The man then drew a gun from his trousers and backed her down the hall to the rear of the building. He put the gun to her body as she walked back to the rear of the building. When he backed her to the rear of the hall he asked her where her rings were, and she told him she did not have them but they were in another room. He told her she would have to go and get them. She went into a room, a door of which opened into the hall, procured three rings and $10 in money, which she gave to the robber. She testified the rings were worth $300. After she delivered them

and the $10 in money to the robber he locked her in the bed-room, took the keys and left. Approximately a week after the robbery she went to the Des Plaines street police station and saw defendant there and identified him as the man who robbed her. She said there were six or seven men present at the time she made the identification. She had not talked with him at that time. At the preliminary hearing held in the Clark street station Mrs. Thorne had a talk with defendant and asked him what he did with her rings. He denied having her rings but said if he were set free he would help her get them. The rings and money were afterwards returned to her at her front door about 7:00 o'clock one evening by a man who did not disclose his identity or in any way connect defendant with the taking or return of the rings and money. The witness testified that the defendant was the same man she identified at the Des Plaines police station and was the man who robbed her.

The only other witness for the People was John A. Lannan, a police officer. He testified that after defendant had been taken to the police station Mrs. Thorne called there and identified him as the robber; that she picked him out of a row of nine or ten men. Lannan testified that after Mrs. Thorne made the identification of Chalem she told the witness defendant had a false front upper tooth, and after she left the witness said he asked defendant about having the false tooth and he admitted it.

It is contended by defendant that the identification was incomplete and uncertain and not sufficient to sustain the verdict. The identification of defendant by the prosecuting witness we think was complete and positive. Nothing in the cross-examination weakened the identification.

The police officer who testified for the People said he arrested defendant on complaint of Robert Boyer for being engaged in a crooked card game and that he was discharged under that complaint. Complaint is made of the

action of the court in admitting any testimony about defendant having been arrested for being engaged in a crooked card game. Of course, that had nothing to do with his guilt or innocence on the charge of robbery. He was taken in custody, however, and while in custody was identified by Mrs. Thorne and a complaint made against him for robbery. On cross-examination counsel for the State was permitted, over objection of defendant, to ask some questions about defendant's arrest for the crooked card game. All that was developed was that he was discharged, and while he alleges the court erred in allowing any examination at all on that question by the People, we cannot see that defendant was prejudiced by the examination, as all the proof showed was that he was discharged. It was on the cross-examination of the witness Lannan by defendant that the proof was made that the officer had picked up defendant first on the complaint for some kind of a crooked card game. The testimony about that charge was not competent on the charge of robbery, but we can not say defendant was injured by it.

Defendant testified as a witness in his own behalf. He denied the robbery and denied that he ever met Mrs. Thorne outside of the court room or police station. He denied visiting her house and robbing her or using a gun in attempting to rob her. He testified that after he was arrested and taken to the police station he was found not guilty of the charge upon which he was arrested; that Mrs. Thorne identified him at the "show up" and pointed him out as the man who committed the robbery. He stated that on September 21 he was in his cousin's store, on West Roosevelt road, arriving there about noontime; that his cousin was pretty busy and he helped him wait on customers and stayed at the store until 6:00 or 6:30, when he went home to supper. He testified he never talked with Mrs. Thorne about her rings and did not tell her that if he could get out he would get them for her. He could not remember

other dates he was at his cousin's store, but said he was out of employment at the time he testified to being at the store and was in the habit of helping his cousin when the latter was busy.

Benjamin Weininger testified he was engaged in soliciting orders for his father, who was in the ice cream business on Arthington street; that he was a friend of defendant's cousin, and on the 21st of September, which was Friday, witness went to Arnold Chalem's delicatessen store after finishing his work, about 12:30; that he helped around "here and there" until 6:00 o'clock; that defendant was at his cousin's store until 6:00 o'clock, when he left. He said he was just standing and talking in the store and stayed and talked from 12:30 to 6:00 at night; that he was out for a few minutes and then came back. He received no pay for staying around Arnold Chalem's store. He did not look at a timepiece to see what time it was when he left, but was positive that it was about 6:00 o'clock, or later, when he left.

Arnold Chalem testified he was proprietor of a delicatessen store; that his store was open the 21st of September until 6:00 or 6:30; that between the hours of 12:00 and 6:00 o'clock a few boys were in, besides customers. They included the witness' cousin, the defendant, who stayed until he closed, at 6:00 o'clock, and some friends. Defendant stayed with the witness from 12:00 o'clock until he closed. On cross-examination he testified defendant was at his store September 21, 20, 19 and 18. He was sure defendant was at his store the 21st of September, because they were just then beginning to close on Fridays, which they did not do during the summer.

The proof of defendant's alibi was not very convincing, and a reviewing court cannot say it was sufficient to raise a reasonable doubt as to the defendant's guilt.

No reversible error was committed by the court in admitting testimony. The prosecuting witness testified she

had a conversation with defendant at the preliminary hearing, and that while he denied having her rings he said if he were freed he would have them returned to her. She was further permitted to testify that the rings were returned to her after that time, with no indication of who it was returned them or that defendant had anything whatever to do with it. We cannot see how this was particularly prejudicial to defendant. It in no way connected him with the return of the rings.

The identification of defendant by the prosecuting witness was certain and definite, and if the witnesses for the People were believed, the jury were justified in finding defendant guilty. It has often been held by this court that the jury are the judges of the weight and credibility of the evidence and in a much better position to determine those questions than is a reviewing court.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*